**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
RAW STORY MEDIA, INC., ALTERNET
MEDIA, INC.,

        Plaintiffs,

        v.

OPENAI, INC., OPENAI GP, LLC,
OPENAI, LLC, OPENAI OPCO LLC,
OPENAI GLOBAL LLC, OAI
CORPORATION, LLC, and OPENAI
HOLDINGS, LLC,

        Defendants.

------------------------------------------------------- X

NO. 1:24-cv-01514-CM

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, AND OPENAI HOLDINGS, LLC'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT .......................................................................................................................... 1

    A. Plaintiffs Lack Article III Standing ............................................................................. 1

        1. Plaintiffs have not alleged a particularized injury. .................................... 1

        2. Plaintiffs have not alleged a concrete injury. ............................................ 3

    B. Plaintiffs Fail To State a Claim Under Section 1202(b). ........................................ 6

        1. Plaintiffs have not alleged "injury" as required by Section 1203(a). ........ 6

        2. Plaintiffs fail to specify the works at issue. ............................................... 7

        3. Plaintiffs have not adequately pled scienter ............................................... 7

III. CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aaberg v. Francesca's Collections, Inc.*,
No. 17-CV-115 (AJN), 2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018) ......................................8

*Andersen v. Stability AI Ltd.*,
No. 23-CV-00201-WHO, 2023 WL 7132064 (N.D. Cal. Oct. 30, 2023)...............................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................9

*Devaney v. Chester*,
813 F.2d 566 (2d Cir. 1987)...................................................................................................8

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) .................................................................................2, 3

*Doe 1 v. GitHub, Inc.*,
No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) .....................................10

*Gilliam v. Am. Broad. Cos., Inc.*,
538 F.2d 14 (2d Cir. 1976)..................................................................................................5, 6

*Hirsch v. CBS Broadcasting Inc.*,
No. 17 CIV. 1860 (PAE), 2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017).................................8

*Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*,
81 F. Supp. 2d 70 (D.D.C. 2000) ...........................................................................................6

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999), *rev'd in part on other grounds*, 336
F.3d 811 (9th Cir. 2003) ......................................................................................................10

*Lamothe v. Atl. Recording Corp.*,
847 F.2d 1403 (9th Cir. 1988) ...............................................................................................5

*Macia v. Microsoft Corp.*,
152 F. Supp. 2d 535 (D. Vt. 2001).........................................................................................5

*Masson v. New Yorker Mag., Inc.*,
501 U.S. 496 (1991)...............................................................................................................5

*Nat. Res. Def. Council, Inc. v. U.S. Dept. of the Interior*,
478 F. Supp. 3d 469 (S.D.N.Y. 2020)....................................................................................6

*Nunes v. Rushton*,
   299 F. Supp. 3d 1216 (D. Utah 2018) ............................................................................... 5

*Olusola v. Don Coqui Holding Co., LLC*,
   No. 19-cv-6909 (MKB) (JO), 2021 WL 631031 (S.D.N.Y. Feb. 18, 2021) ........................ 4

*Petrone v. Turner Publ'n Co. LLC*,
   No. 22-cv-2698 (AS), 2023 WL 7302447 (S.D.N.Y. Nov. 6, 2023) ................................... 5

*Reilly v. Commerce*,
   No. 15-cv-05118 (PAE) (BCM), 2016 WL 6837895 (S.D.N.Y. Oct. 31, 2016) ................. 5

*Sims v. Blanchris, Inc.*,
   648 F. Supp. 480 (S.D.N.Y. 1986) .................................................................................... 5

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .......................................................................................................... 1

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................................................. 3, 5, 6

*Tremblay v. OpenAI, Inc.*,
   No. 23-CV-03223-AMO, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ........................... 10

**Statutes**

17 U.S.C. § 106 ........................................................................................................................ 4

17 U.S.C. § 1202 .............................................................................................................. *passim*

17 U.S.C. § 1203 ...................................................................................................................... 6

**Other Authorities**

H. Rep. No. 105-551 (1998) ..................................................................................................... 4

H. Rep. No. 105-796 (1998) ..................................................................................................... 4

Jane C. Ginsburg, *The Right to Claim Authorship in U.S. Copyright and
   Trademarks Law*, 41 Houston L. Rev. 263, 283-85 (2004) .............................................. 5

Restatement (2d) of Torts § 624 ............................................................................................... 6

Russell W. Jacobs, *Copyright Fraud in the Internet Age*, 13 Colum. Sci. & Tech.
   L. Rev. 97, 146 (2012) ....................................................................................................... 5

S. Rep. No. 105-190 (1998) ...................................................................................................... 4

**I.      INTRODUCTION**

Plaintiffs still have not explained what, exactly, they are alleging against OpenAI. Nowhere in their 20-page opposition brief (nor their Complaint) have Plaintiffs identified a single work from which OpenAI supposedly removed copyright management information. Nor do Plaintiffs offer an example of a ChatGPT output that looks anything like one of Plaintiffs' articles. And Plaintiffs say nothing about the mysterious "approximations" of OpenAI's training datasets upon which Plaintiffs rest their claim. Accordingly, and for the reasons that follow, Plaintiffs do not have standing to bring this lawsuit, let alone state any claim for which relief can be granted.

**II.     ARGUMENT**

    **A.      Plaintiffs Lack Article III Standing.**

        **1.      Plaintiffs have not alleged a particularized injury.**

Plaintiffs concede that an injury "must affect the plaintiff in a personal and individual way" to confer Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). But to support their argument, Plaintiffs make only the conclusory assertion that "Defendants removed CMI from ***their*** copyright-protected news articles." (Opp. at 8 (emphasis in original).) Bolded and italicized text notwithstanding, Plaintiffs have not shown that OpenAI's alleged conduct has affected *Plaintiffs*. Instead, the complaint asserts that ChatGPT "regurgitate[s]" or "mimic[s] significant amounts of material from copyright-protected works of journalism" (but not *Plaintiffs'* works of journalism); that ChatGPT "generally does not provide the author, title, and copyright information applicable to the works on which its responses are based" (but not to *Plaintiffs'* works); and that ChatGPT produces responses "frequently based on copyrighted works of journalism" (but not *Plaintiffs'* copyrighted works of journalism). (Compl. ¶¶ 34, 35, 39, 40.)

1

*Doe 1 v. GitHub, Inc.* shows why this is not enough.  Regarding standing for damages, *Doe 1* is on all fours with this case.  Contrary to Plaintiffs' characterization, it did not matter in that case that the plaintiffs had framed their injury as a "violation of their licenses."  (Opp. at 9.) Rather, the court rejected standing because plaintiffs did not allege that *they*, personally, had suffered any injury.  *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 850 (N.D. Cal. 2023).  This was because "while Plaintiffs identif[ied] several instances in which [the AI model]'s output matched licensed code written by [another] Github user, none of these instances involve[d] licensed code published . . . by Plaintiffs." *Id.* (citation omitted)*.*  The same is true here— Plaintiffs fail to identify any work of journalism published by *Plaintiffs*, whether in ChatGPT outputs or in OpenAI's training data, that is the basis for any Section 1202 claim.  Regardless of how Plaintiffs or the Court define the alleged harm, Plaintiffs lack standing for damages because they "have not suffered the injury they describe." *Id.*

Further, Plaintiffs are not similarly situated to the *Doe 1* plaintiffs regarding standing for injunctive relief.  In that case, plaintiffs were able to plead a "sufficiently imminent and substantial" risk of a future Section 1202 violation because they alleged that the AI model was trained on public GitHub code repositories in which plaintiffs' code resided, and that the AI model was alleged to output verbatim code from public GitHub code repositories 1% of the time. *Doe 1*, 672 F. Supp. 3d at 851.  As *Doe 1* was about a model that exclusively suggests software completions, the Court found that these facts created a plausible inference of a "substantial risk" that the LLM "will reproduce *Plaintiffs'* licensed code." *Id.* (emphasis added).  Plaintiffs here make no similar allegation about training on specifically identifiable repositories containing Plaintiffs' works of journalism, nor about the rate at which ChatGPT outputs verbatim works of journalism from any such identifiable repositories.  In other words, they have not shown any

substantial risk that *their* copyrighted works will be outputted by ChatGPT in the future. Instead, they rely entirely on threadbare generalizations about unidentified "approximations." Accordingly, Plaintiffs have not shown that there is a "realistic danger of sustaining a direct injury," and they do not have standing to seek injunctive relief. *See id.* In any event, at a minimum, this Court should do what the *Doe 1* court did and dismiss the claims for damages.

### 2. Plaintiffs have not alleged a concrete injury.

In their opposition, Plaintiffs argue that they have standing because they have alleged a "concrete" injury under *TransUnion v. Ramirez*. But the Supreme Court in that case *rejected* a strikingly similar allegation of harm. There, plaintiffs also brought a claim based on the alleged presence of data in a nonpublic dataset, in a condition that they claimed violated federal law. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418–19 (2021). Specifically, in *TransUnion*, the dataset contained false information. But the Court held that only the plaintiffs whose false information was *disseminated* to third parties had suffered a concrete harm. *Id.* at 432. Plaintiffs cannot distinguish these facts, so they instead spend the bulk of their opposition giving a history lesson. But Plaintiffs cannot avoid the conclusion that "the mere existence of inaccurate information in a database is insufficient to confer Article III standing." *Id.* at 434.

### a. Because Section 1202(b) is about attribution, Plaintiffs cannot analogize their injury to a property-related harm.

To determine whether Plaintiffs' alleged harm is "concrete," this Court must evaluate whether Plaintiffs have identified "a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424. Plaintiffs argue that they have done so because OpenAI allegedly infringed its right to "exclude others from using [their] property," which they claim is good enough for standing in a copyright infringement case. (Opp. at 7.) Plaintiffs, however, do not bring a copyright infringement claim; they bring only a Section 1202 claim. While those two

3

claims may share "similar remedies," (Opp. at 6), they protect different rights. Copyright claims are about violations of certain exclusive rights granted to copyright holders in a particular work. *See* 17 U.S.C. § 106 (listing the exclusive rights of copyright holders). The violation of those exclusive rights in a particular work is a property-based injury. But Section 1202 claims are not about the violation of an owner's rights with respect to a work, but about the "information conveyed in connection with copies . . . of a work." *Id.* § 1202(c). Section 1202 is therefore about *attribution* rights, not property rights.

Section 1202's legislative history discusses this connection to attribution-related harms. When Congress drafted Section 1202, it expressly intended that provision to assist in "indicating attribution, creation, and ownership." S. Rep. No. 105-190, at 16 (1998). In fact, Congress passed Section 1202 in part to implement the United States' obligations under international copyright treaties that require signatories to protect the right of attribution. *See* H. Rep. No. 105-796, at 64 (1998) (Section 1202 was drafted to comply with treaty provisions "requiring contracting parties to protect the integrity of copyright management information . . . which identifies the work, the author of the work, [or] the owner of any right in the work"). Congress further explained that Section 1202 "protect[s] consumers from misinformation." H. Rep. No. 105-551, at 10-11 (1998). This risk of misinformation results from interference with attribution, rather than from interference with the right to exclude others from property. In opposition, Plaintiffs note that "Congress's view on the matter is entitled to considerable weight." (Opp. at 6 (citing *Spokeo*, 578 U.S. at 341).) Here, Congress's view is that Section 1202 seeks to redress attribution- and misinformation-related harms.

Further, courts have consistently viewed Section 1202 as addressing attribution-related harms. *See, e.g.*, *Olusola v. Don Coqui Holding Co., LLC*, No. 19-cv-6909 (MKB) (JO), 2021

WL 631031, at *5 (S.D.N.Y. Feb. 18, 2021) ("Defendant deprived Plaintiff of his right to attribution . . . by removing Plaintiff's CMI"); *Reilly v. Commerce*, No. 15-cv-05118 (PAE) (BCM), 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016) ("Defendant's removal of her copyright notice and other CMI deprived her of professional recognition."). And much ink has been spilled in the pages of law reviews about Section 1202's connection to attribution rights. *See, e.g.*, Russell W. Jacobs, *Copyright Fraud in the Internet Age*, 13 Colum. Sci. & Tech. L. Rev. 97, 146 (2012) (the DMCA's "CMI protections [are] analogous to a limited right of integrity or attribution"); Jane C. Ginsburg, *The Right to Claim Authorship in U.S. Copyright and Trademarks Law*, 41 Houston L. Rev. 263, 283-85 (2004) (Section 1202 "may contain the seeds of a general attribution right"). Accordingly, Plaintiffs' alleged injury is a harm to their attribution right, rather than to their right to exclude others from their property.

        **b.**        **A "close historical or common-law analogue" for an attribution-related harm would require dissemination.**

While an analogy to a property-related injury is inapt, courts have recognized a connection between attribution-related harms and various other common law torts. *See, e.g.*, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 511-12 (1991) (defamation); *Petrone v. Turner Publ'n Co. LLC*, No. 22-cv-2698 (AS), 2023 WL 7302447, at *4 (S.D.N.Y. Nov. 6, 2023) (false light); *Gilliam v. Am. Broad. Cos., Inc.*, 538 F.2d 14, 24 (2d Cir. 1976) (unfair competition); *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988) ("passing off"); *Sims v. Blanchris, Inc.*, 648 F. Supp. 480, 482 (S.D.N.Y. 1986) ("reverse passing off"); *Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 541 (D. Vt. 2001) (slander of title).

Importantly, each of these torts requires dissemination to a third party. *See, e.g.*, *TransUnion*, 594 U.S. at 434 (publication is "essential to liability" for defamation); *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1235 (D. Utah 2018) (a false light claim "requires publication");

5

*Gilliam*, 538 F.2d at 24 (tort of unfair competition vindicates "the author's personal right to prevent the presentation of his work *to the public* in a distorted form" (emphasis added)); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 74 (D.D.C. 2000) ("If A claims that B is selling B's products and representing *to the public* that they are A's, that is passing off." (emphasis added)); Restatement (2d) of Torts § 624 (slander of title relates to the "*publication* of a false statement disparaging another's property rights" (emphasis added)).[1]

Accordingly, just as a "letter that is not sent does not harm anyone," *TransUnion*, 594 U.S. at 434, neither does the allegedly missing CMI in an internal database harm anyone without an allegation that ChatGPT has outputted Plaintiffs' works to users in the real world—an allegation Plaintiffs have not made. Because Plaintiffs have not alleged a concrete injury, this Court should dismiss the complaint for lack of standing.

    **B.**    **Plaintiffs Fail To State a Claim Under Section 1202(b).**

          **1.**    **Plaintiffs have not alleged "injury" as required by Section 1203(a).**

Section 1202 claims may be brought only by a plaintiff that has been "injured" by the alleged statutory violation. 17 U.S.C. § 1203(a). Plaintiffs argue that there is "no reason to believe that 'injury' under section 1203(a) means anything different than it does under Article III." (Opp. at 10.) But the "canon against surplusage favors giving full effect to all of a statute's provisions so that no part will be inoperative or superfluous, void or insignificant." *Nat. Res. Def. Council, Inc. v. U.S. Dept. of the Interior*, 478 F. Supp. 3d 469, 484 (S.D.N.Y. 2020) (cleaned up). Section 1203(a) would mean nothing if a statutory violation, without more, was an "injury." As explained in OpenAI's opening brief, Plaintiffs have not alleged how they were injured by the presence of CMI-less copies in OpenAI's internal datasets. (*See* Mot. at 11–12.)

---

[1] The tort of "slander of title" also shows that Plaintiffs are wrong to suggest that if a tort involves property rights, "interference . . . without more, [is] a concrete injury." (Opp. at 7.)

Accordingly, Plaintiffs have not shown that they have statutory standing.

### 2. Plaintiffs fail to specify the works at issue.

Plaintiffs do not dispute that they must plausibly allege the works at issue. (Opp. at 13-14.) Instead, they improperly shift the burden to OpenAI. They claim that they "cannot name all their works contained in Defendants' training sets precisely because Defendants have kept them secret." (*Id.* at 13.) This argument—which relies on no authority—fails. If Plaintiffs know enough to plausibly allege that OpenAI removed CMI from its works (as Plaintiffs claim to do), then they must know enough to plausibly allege which works OpenAI removed CMI from. (Compl. ¶ 37; Opp. at 16-17.)

Indeed, Plaintiffs' claim relies almost exclusively on alleged "public approximations of ChatGPT's training sets" that supposedly contain "thousands of Plaintiff's copyright-protected news articles" without CMI. (Opp. at 16-17; *see also id.* at 3.) Setting aside that Plaintiffs have not identified what these "approximations" are, how they were created, or who created them, if Plaintiffs can rely on the "approximations" to allege removal of CMI from specific works, they should also be able to rely on them to identify those works. Plaintiffs have not done so, nor provided any reason why they cannot do so. Their DMCA claim fails for this reason alone.

### 3. Plaintiffs have not adequately pled scienter.

There is no doubt that Plaintiffs must plead Section 1202(b)'s "double-scienter" requirements. (Opp. at 15.) The dispute instead centers on two issues. First, whether conclusory assertions, without more, are sufficient to plead OpenAI's "double scienter." (*Id.* at 16 ("This itself is enough").) And second, whether Plaintiffs have pled any facts beyond those conclusory allegations to satisfy the "double-scienter" requirement. (*Id.* at 18-20.)

#### a. Pleading scienter requires more than conclusory assertions.

Plaintiffs suggest that because "courts should be lenient in allowing scienter issues to

survive motions to dismiss," they need not plead *any facts at all* regarding scienter. (Opp. at 15.) But the cases that Plaintiffs cite do not stand for the proposition that a threadbare recitation of the elements is enough.

In *Aaberg v. Francesca's Collections, Inc.*, plaintiffs alleged that they issued a cease-and-desist letter to the defendant, who continued to sell infringing products anyway. No. 17-CV-115 (AJN), 2018 WL 1583037, at *9 (S.D.N.Y. Mar. 27, 2018). The court expressly relied on the alleged facts of the cease-and-desist letter and the continued sales to find that plaintiffs had adequately pled scienter. *Id.* Similarly, in *Hirsch v. CBS Broadcasting Inc.*, the court reviewed a particular use of plaintiff's work —an appearance of plaintiff's photo in an episode of *48 Hours* — that revealed "a cropping out of [a] gutter credit from the Photo." No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017). The court explained that it could "fairly infer[]" scienter at the pleading stage because "the amount of material cropped out was minimal, and within it, [plaintiff's] photo credit was prominent." *Id.*

Here, by contrast, Plaintiffs allege no such cease-and-desist letter or any particular use of Plaintiffs' work that gives rise to an inference about OpenAI's state of mind. Indeed, Plaintiffs allege no facts *at all* about the works from which OpenAI supposedly removed CMI. It is therefore not "enough" for Plaintiffs to make conclusory allegations in the absence of plausible factual allegations like those in *Aaberg* and *Hirsch*. (Opp. at 16, 18); *see also Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) (plaintiffs must "provide at least a minimal factual basis for their conclusory allegations of scienter").

      **b.**  **Plaintiffs do not plead sufficient facts beyond their conclusory assertions.**

Beyond rehashing the complaint's conclusory allegations, Plaintiffs' opposition does nothing to explain how Plaintiffs have plausibly alleged either prong of the double scienter

8

requirement.

First, as to Section 1202(b)'s "intent to remove CMI" requirement, Plaintiffs rely on the unknown contents of unidentified "approximations of ChatGPT's training data." (Opp. at 16.) In Plaintiffs' telling, because these unidentified "approximations" show that "the ChatGPT training data lacks CMI," it is plausible that OpenAI intentionally removed any missing CMI. (*Id.*) Yet, Plaintiffs offer no details about the "approximations"—who created them, where they can be found, or whether they contain the information Plaintiffs say they do. (Compl. ¶ 37.) At most, this allegation is merely consistent with, but does not plausibly suggest, a Section 1202 violation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (plaintiff must plead "allegations plausibly suggesting (not merely consistent with)" the alleged wrongful conduct).

Second, Plaintiffs fail to allege that OpenAI removed CMI from Plaintiffs' works with reason to know that doing so would induce, enable, facilitate or conceal an infringement. 17 U.S.C. § 1202(b). Plaintiffs do not contest that they must allege "some identifiable connection between the defendant's actions and infringement or likelihood of infringement." (Mot. at 16 (citing *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313,1325 (11th Cir. 2022).) Instead, Plaintiffs point only to "a study conducted by Copyleaks." (Opp. at 19.) But this third-party study does not even say what Plaintiffs claim it does. For example, the study showed that the frequency with which GPT-3.5 output reproduced content verbatim ranged dramatically by subject: in social sciences the study found that GPT-3.5 would on average reproduce just 21 words of a 412-word essay. However, journalism- or news-related content was not among the 26 different subjects that the study analyzed. In other words, the Copyleaks study is not relevant to Plaintiffs' content at all—at best, Plaintiffs have alleged only that some limited regurgitation, wholly outside of the news-related context, has been known to occur. This is a far

9

cry from an allegation that OpenAI had reason to know that allegedly removing CMI would induce, enable, facilitate, or conceal any regurgitation, much less regurgitation of Plaintiffs' content, or even any news-related content at all.[2]  *See Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003) (no Section 1202 liability where search engine "crawler did not include [CMI] when it indexed the images," even when the CMI-less images appeared in the index).

### III.   CONCLUSION

Courts have repeatedly rejected claims brought under Section 1202 based on the training of AI models, even in cases where the plaintiffs alleged far more than Plaintiffs have here.  *See, e.g.*, *Tremblay v. OpenAI, Inc.*, No. 23-CV-03223-AMO, 2024 WL 557720, at *4 (N.D. Cal. Feb. 12, 2024) (rejecting Section 1202 claim where the plaintiffs alleged that "[b]y design," OpenAI removed CMI from the copyrighted books used during the training process); *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at *9 (N.D. Cal. Jan. 22, 2024) (dismissing 1202 claims where the plaintiffs had not alleged that OpenAI's model outputted code identical to the Plaintiffs' works); *Andersen v. Stability AI Ltd.*, No. 23-CV-00201-WHO, 2023 WL 7132064, at *11 (N.D. Cal. Oct. 30, 2023) (dismissing Section 1202 claim where the plaintiffs had not alleged the specific CMI included in the images that each plaintiff contends was included in the relevant training dataset).  Plaintiffs have not even alleged the works from which CMI was supposedly removed, let alone that anything resembling those works was ever outputted by one of Defendants' models.  Plaintiffs' complaint should be dismissed in its entirety.

---

[2] In any event, Plaintiffs also fail to plausibly allege why any such regurgitation would not be a fair use, which is not an infringement of copyright and accordingly cannot support Section 1202(b) liability.

10

Dated: May 20, 2024  MORRISON & FOERSTER LLP

By: */s/ Joseph C. Gratz*
Joseph C. Gratz (*pro hac vice*)
JGratz@mofo.com
Vera Ranieri (*pro hac vice*)
VRanieri@mofo.com
425 Market Street
San Francisco, CA  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

Allyson R. Bennett (*pro hac vice*)
abennett@mofo.com
Rose S. Lee (*pro hac vice*)
roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA  90017-3543
Telephone:  213.892.5200
Facsimile:  213.892.5454

Eric Nikolaides
enikolaides@mofo.com
250 W. 55th Street
New York, NY 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendants
OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC

LATHAM & WATKINS LLP

By: /s/ *Joseph R. Wetzel*
Joseph R. Wetzel
joseph.wetzel@lw.com
Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
sy.damle@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman
alli.stillman@lw.com
Luke A. Budiardjo
luke.budiardjo@lw.com
Yijun Zhong
elaine.zhong@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

Attorneys for Defendants
OPENAI, INC., OPENAI GP, LLC,
OPENAI, LLC, OPENAI OPCO LLC,
OPENAI GLOBAL LLC, OAI
CORPORATION, LLC, and OPENAI
HOLDINGS, LLC

KEKER, VAN NEST & PETERS LLP

By: */s/ Thomas E. Gorman*
    Robert A. Van Nest (*pro hac vice*)
    rvannest@keker.com
    R. James Slaughter (*pro hac vice*)
    rslaughter@keker.com
    Paven Malhotra
    pmalhotra@keker.com
    Michelle Ybarra (*pro hac vice*)
    mybarra@keker.com
    Nicholas S. Goldberg (*pro hac vice*)
    ngoldberg@keker.com
    Thomas E. Gorman (*pro hac vice*)
    tgorman@keker.com
    Katie Lynn Joyce (*pro hac vice*)
    kjoyce@keker.com
    633 Battery Street
    San Francisco, CA 94111-1809
    Telephone: 415.391.5400
    Facsimile: 415.397.7188

    Attorneys for Defendants
    OPENAI, INC., OPENAI GP, LLC,
    OPENAI, LLC, OPENAI OPCO LLC,
    OPENAI GLOBAL LLC, OAI
    CORPORATION, LLC, and OPENAI
    HOLDINGS, LLC