**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAW STORY MEDIA, INC., ALTERNET MEDIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC, <br><br> Defendants. | No. 1:24-cv-01514-SHS |

**MEMORANDUM OF LAW IN SUPPORT OF *RAW STORY* PLAINTIFFS' MOTION FOR RECONSIDERATION OF DISMISSAL AND DENIAL OF LEAVE TO AMEND COMPLAINT**

- i -

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND .............................................................................................................1

    A. The *Raw Story* litigation.........................................................................................1

    B. The MDL proceeding..............................................................................................4

III. ARGUMENT...................................................................................................................6

    A. The MDL order constitutes a changed circumstance warranting reconsideration........................................................................................................6

    B. The *Raw Story* Plaintiffs have standing..................................................................9

    C. The Court should allow the *Raw Story* Plaintiffs to amend their complaint ..............10

IV. CONCLUSION ..............................................................................................................12

## TABLE OF AUTHORITIES

*Page*

**Cases**

*Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362 (2d Cir.) ........................................................6

*Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301 (S.D.N.Y. 1996) ......................................7

*In re Grand Jury Proc. (Kluger)*, 827 F.2d 868 (2d Cir. 1987) .......................................................6

*In re Long Distance Telecomm. Litig.*, 612 F. Supp. 892 (E.D. Mich. 1985) .................................7

*In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353 (2d Cir. 2013) ......................................6, 8

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ..............................................................................8

*New York Times Co. v. Microsoft Corp.*, No. 23-CV-11195, 2025 WL 1009179
(S.D.N.Y. Apr. 4, 2025) .................................................................................7, 9, 10, 11, 12

*Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46
(2d Cir. 2024) .....................................................................................................................3, 10

*Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir. 2005) ........................................................................7

*The Intercept Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01515, 2025 WL 556019
(S.D.N.Y. Feb. 20, 2025) ...............................................................................................4, 7, 10

*Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944 (2d Cir. 1964) ........................6

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ...................................................................................................................10

Fed. R. Civ. P. 58(a) .........................................................................................................................6

S. Rep. 105-190 (1998) ..................................................................................................................11

I.    INTRODUCTION

In this multidistrict litigation, all but one set of plaintiffs have survived challenges to their standing to bring copyright management removal claims against OpenAI under section 1202(b)(1) of the Digital Millennium Copyright Act. The outliers, Raw Story Media, Inc. and AlterNet, Media, Inc. (the "*Raw Story* Plaintiffs") respectfully seek reconsideration of the dismissal of their complaint, and denial of leave to amend it to bring it in line with claims this Court has already upheld against dismissal. Doing so will achieve the consistency in pretrial rulings and discovery efficiencies that motivated OpenAI to seek an MDL in the first place, and ensure that the *Raw Story* plaintiffs, like the others, have their day in court to challenge OpenAI's violations of the DMCA in creating their massively lucrative AI chatbot.

II.    BACKGROUND

A.    **The *Raw Story* litigation.**

The *Raw Story* Plaintiffs brought a single-count complaint against OpenAI for removing their copyright management information in violation of 17 U.S.C. § 1202(b)(1).[1] Compl. *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01514 (S.D.N.Y. Feb. 28, 2024), ECF No. 1. OpenAI moved to dismiss for lack of Article III standing and failure to state a claim. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss at 4-18, *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01514 (S.D.N.Y. Apr. 29, 2024), ECF No. 68.[2] The *Raw Story* Plaintiffs opposed, arguing that removal of copyright management information presents a sufficiently close analogy to copyright infringement to ground standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at

---

[1] Unlike the other parties in this MDL that brought DMCA claims, the *Raw Story* Plaintiffs did not sue Microsoft and did not bring any claims under section 1202(b)(3).
[2] OpenAI raised what it has sometimes called "statutory standing" under the failure-to-state-a-claim rubric. *See id.* at 11-12.

5-11, *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01514 (S.D.N.Y. May 13, 2024), ECF No. 71. They also argued that the complaint stated a claim. *See id*. at 10-20. They further sought leave to replead should the Court dismiss the complaint. *See id*. at 21.

In a November 7, 2024 order, the court granted OpenAI's motion on standing grounds and did not reach the adequacy of the pleadings. *See* Match Decl. Ex. 1 ("MTD Order"). It was "not convinced that injury for interference with property provides the necessary 'close historical or common-law analogue' to Plaintiffs' alleged injury," and thus rejected the argument that the injury "bears a 'close relationship' to the tort of copyright infringement." *Id*. at 6. The court also held that removal of CMI does not constitute a concrete injury "absent dissemination." *Id*. at 7. And it denied leave to amend, but without prejudice to the filing of a motion that attached the proposed pleading "together with an explanation of why the proposed amendment would not be futile." *Id*. at 10.

The *Raw Story* Plaintiffs filed that motion two weeks later. The Proposed First Amended Complaint ("PFAC") that accompanied it was substantively identical to the section 1202(b)(1)-related allegations in The Center for Investigative Reporting's First Amended Complaint, which was drafted by the same counsel. *Compare* Match Decl. Ex. 2 (the PFAC) *with* First Amended Complaint, *The Center for Investigative Reporting, Inc. v. OpenAI, Inc.*, No. 24-cv-04872 (Sept. 24, 2024), ECF No. 88 (the "CIR FAC"). For that reason, the briefing on the futility of the amendments closely tracked the briefing in *CIR* pertaining to OpenAI's motion to dismiss the section 1202(b)(1) claim. The *Raw Story* Plaintiffs continued to argue that CMI removal presented a sufficiently close analogy to copyright infringement under *TransUnion*, particularly because OpenAI allegedly removed the CMI through actual *prima facie* copyright infringement. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Leave to Amend Complaint or, in

the Alternative, to Continue Taking Jurisdictional Discovery at 3-6, *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01514 (S.D.N.Y. Nov. 21, 2024), ECF No. 119 ("MTA"). The *Raw Story* Plaintiffs also expanded on an argument made in *CIR* that removing CMI is analogous to the common-law action for unjust enrichment, citing Second Circuit precedent that disgorgement of ill-gotten profits can ground standing after *TransUnion* even without a separate economic loss, and arguing that OpenAI unjustly enriched itself by removing their CMI. *See id.* at 6-9; *Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 51-56 (2d Cir. 2024), cert. denied, 145 S. Ct. 550 (2024); *see also* Plaintiff's Combined Response to Defendants' Motions to Dismiss the First Amended Complaint at 20-21, *The Center for Investigative Reporting, Inc. v. OpenAI, Inc.*, No. 24-cv-04872 (S.D.N.Y. Nov. 5, 2024), ECF No. 133.

On the merits, the dispute centered on whether the *Raw Story* had statutory standing as a "person injured" under 17 U.S.C. § 1203(a) and whether the proposed new pleading plausibly alleged scienter. *See* MTA at 12-17; OpenAI's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend Complaint or, in the Alternative, to Continue Taking Jurisdictional Discovery at 14-19, *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01514 (Dec. 20, 2024), ECF No. 122 ("MTA Opp."); Plaintiffs' Reply in Support of Their Motion for Leave to Amend Complaint or, in the Alternative, to Continue Taking Jurisdictionatl Discovery at 7-10, *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01514 (S.D.N.Y. Jan. 21, 2025), ECF No. 127.

The court denied leave to amend on April 3, 2025. It held again that the "unauthorized removal of CMI from … copyrighted-protected work" is not a concrete injury absent dissemination, and that copyright infringement is not a close historical analogue to CMI removal. Match Decl. Ex. 3 at 2-3 ("MTA Order"). It also rejected the analogy to unjust enrichment because the complaint did not explain how OpenAI's profits "would have found its way to or from

Plaintiffs' pockets," without discussing the Second Circuit's holding in *Packer*. *Id*. at 3. Because it ruled on Article III standing, the court did not address 17 U.S.C. § 1203(a) or scienter.

The court had earlier allowed discovery to proceed pending OpenAI's motion to dismiss. Match Decl. ¶ 8. Thus, the parties pursued written discovery until the court dismissed the initial complaint in November. *Id*. ¶ 9. So the case is in roughly the same discovery posture as several of the other cases that have been centralized, and is even ahead in some respects. For example, OpenAI has provided the *Raw Story* Plaintiffs with copies of their works as they are contained in OpenAI's training sets, which it has not done for CIR even though the latter requested similar documents in October. *Id*. ¶¶ 10-11.

### B. The MDL proceeding.

After the court dismissed the *Raw Story* complaint, OpenAI asked the Judicial Panel on Multidistrict Litigation to transfer all the copyright-adjacent cases against it, including *Raw Story*, into a multidistrict litigation ("MDL"). *See* Brief in Support of OpenAI's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings, *In re OpenAI, Inc. Copyright Infringement Litigation*, MDL No. 3143 (J.P.M.L. Dec. 6, 2024), ECF No. 1-1 ("MDL Motion"). OpenAI argued at length that an MDL was necessary to, "avoid inconsistent rulings on important and emerging questions of law," warning that any such inconsistencies "will not only hamper and prejudice the parties in this litigation, but risk creating confusion and uncertainty in the development of LLMs and artificial intelligence more broadly, stymying growth and innovation in a burgeoning field." *Id*. at 16.

In support, OpenAI highlighted the diverging conclusions reached in *Raw Story* and *Intercept*, which had found standing for CMI removal claims against OpenAI. *See The Intercept Media, Inc. v. OpenAI, Inc*., No. 24-cv-01515, 2025 WL 556019, at *4-6 (S.D.N.Y. Feb. 20, 2025). Specifically, OpenAI argued:

> [T]wo judges have reached different outcomes on the same legal issue presented by two near-identical complaints brought by the same counsel, in the same district. Section 1407 centralization is intended to prevent precisely such inconsistencies. These fractures will only grow as the litigation progresses. This Panel can ensure that the courts issue consistent guidance in this vanguard litigation by centralizing the litigation in a single district, before a single judge.

*Id*. at 17.[3] It doubled down on reply, stressing that the risk of inconsistent rulings is "among the most compelling bases for centralization." Reply Brief in Support of OpenAI's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings at 4, *In re OpenAI, Inc. Copyright Infringement Litigation*, MDL No. 3143 (J.P.M.L. Jan. 10, 2025), ECF No. 62.

OpenAI also argued that centralization "is necessary to limit duplicative discovery." MDL Motion at 14. In particular, OpenAI complained that without centralization, its witnesses "are virtually guaranteed to sit for multiple depositions," *id*. at 15, and criticized the plaintiff groups for purportedly not agreeing "to single depositions of witnesses," *id*.

The Panel granted OpenAI its wish for a coordinated and centralized proceeding. It reasoned that "[c]entralization will allow a single judge to … eliminate inconsistent rulings." Transfer Order at 3, *In re OpenAI, Inc. Copyright Infringement Litigation*, MDL No. 3143 (J.P.M.L. Apr. 3, 2025), ECF No. 85. It also held that centralization will "eliminate duplicative

---

[3] In opposing centralization, the *Raw Story* Plaintiffs, together with The Intercept, argued that OpenAI had not shown a direct conflict between the *Raw Story* and *Intercept* decisions. Though *Raw Story* and *Intercept* started from similar complaints, the *Intercept* court had allowed The Intercept to file an amended complaint, which added allegations The Intercept argued bolstered its argument for standing. When these parties responded to OpenAI's motion, the *Intercept* court had issued a bottom-line order but not a full opinion, and it was therefore possible that those allegations had affected the outcome. *See* DMCA Plaintiffs' Response to OpenAI's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings at 4, 12, *In re Open, Inc. Copyright Infringement Litigation*, MDL No. 3143 (J.P.M.L. Jan. 3, 2025), ECF No. 51. Now that the court has issued a full opinion, it does appear that *Intercept* and *Raw Story* cannot be reconciled. So too for *Raw Story* and *New York Times*.

depositions of defense witnesses." *Id*.  The Panel issued its order on the same day as the *Raw Story* order denying leave to amend, but after that order had issued.

### III. ARGUMENT

#### A. The MDL order constitutes a changed circumstance warranting reconsideration.

Under Fed. R. Civ. P. 54(b), a court may "reconsider a decision or order at any time before the entry of final judgment." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362 (2d Cir.), cert. denied, 145 S. Ct. 279 (2024).  Though the court disposed of all open substantive motions prior to the MDL order, final judgment has not yet entered.  *See* Fed. R. Civ. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document."); Docket, *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01514 (S.D.N.Y.) (lacking reference to a separate document entering final judgment).  Thus, Rule 54(b) governs this motion.  In the alternative, the *Raw Story* Plaintiffs seek reconsideration under Fed. R. Civ. P. 60(b)(6), which allows for relief from a final judgment or order for "any other reason that justifies relief."  Under both rules, courts must balance interests in finality and judicial resources with other competing considerations.  *See Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."); *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) ("Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments.").

Transferee courts have the power to override transferor courts' prior rulings.  *See In re Grand Jury Proc. (Kluger)*, 827 F.2d 868, 871 n.3 (2d Cir. 1987) ("A transfer under 28 U.S.C. § 1407 transfers the action lock, stock, and barrel. The transferee district court has the power and the obligation to modify or rescind any orders in effect in the transferred case which it concludes

- 6 -

are incorrect.") (cleaned up). In the MDL context, finality often gives way to the interests that motivated the transfer in the first place: consistency. Thus, in upholding a district court's reconsideration of a dismissal order, the Fourth Circuit observed that the "constraint" ordinarily warranted when a district court is asked to reconsider a prior order "is not always justified in the multidistrict litigation context, where there is a need for consistent treatment of consolidated cases." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005). For the same reasons, other MDL courts adjudicating motions to reconsider dismissal orders have found that the need to ensure consistent pretrial rulings "can constitute, as here, the type of 'significant' and 'fundamental' change warranting reconsideration of the order by the transferee court." *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1309 (S.D.N.Y. 1996) (quoting *In re Long Distance Telecomm. Litig.*, 612 F. Supp. 892, 903 (E.D. Mich. 1985), aff'd in part, rev'd in part on other grounds, 831 F.2d 627 (6th Cir. 1987)).

Reconsideration is appropriate here for two reasons. First, as in the cases cited above, the transferor courts have decided motions presenting identical issues. This Court, and the court in *Intercept*, held that CMI removal constitutes a concrete injury to property rights analogous to copyright infringement, and rejected OpenAI's argument that standing also requires dissemination. *See New York Times Co. v. Microsoft Corp.*, No. 23-CV-11195, 2025 WL 1009179, at *12-15 & n.6 (S.D.N.Y. Apr. 4, 2025); *Intercept*, 2025 WL 556019, at *3-6. The *Raw Story* court reached the opposite conclusion. *See* MTD Order at 6-7. Thus, reconsideration is necessary to correct an inconsistency among pretrial rulings in cases that OpenAI chose to insert into its MDL proposal.

Second, reconsideration will also create efficiencies in discovery—OpenAI's other main reason for seeking an MDL. Though the case has been dismissed since November, the parties have already engaged in substantial discovery, and the *Raw Story* Plaintiffs anticipate being able

to participate without altering the schedule, assuming this motion is decided reasonably promptly. *See* Match Decl. ¶¶ 8-10. On the other hand, if they are forced to appeal, and the Second Circuit joins this Court and *Intercept* in finding standing, then the MDL cases might well be over, and OpenAI would have to do the rest of discovery all over again. Notably, the *Raw Story* Plaintiffs would then have the opportunity to depose OpenAI's witnesses—directly contrary to OpenAI's desire to have its witnessed deposed only once.

OpenAI cannot deny this. It moved for, and obtained, an MDL for precisely these reasons. Indeed, OpenAI's success in obtaining an MDL for these purposes judicially estops it from objecting to these benefits of reconsideration. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (cleaned up).

The same result follows under Rule 60(b)(6). For instance, in *In re Terrorist Attacks*, the Second Circuit reversed the district court's denial of a Rule 60(b)(6) motion in an MDL case. The court had upheld the dismissal of claims brought by a first set of plaintiffs, but reached the opposition conclusion in a later opinion involving similarly situated plaintiffs joined later in the MDL process. *See* 741 F.3d at 355-56. The first set of plaintiffs, whose claims had been dismissed, then sought relief under Rule 60(b)(6). The court held that it would be unfair to allow "inconsistent results between two sets of plaintiffs suing for damages based on the same incident," *id*. at 357 and found that result "particularly troubling" because that inconsistency resulted from the timing of the MDL centralization, which had been ordered to "prevent inconsistent pretrial rulings," *id*. at 358.

Similar considerations apply here. The *Raw Story* Plaintiffs' claims arise out of the same actions by OpenAI as those that have been allowed to proceed: OpenAI's removal of CMI from their articles in the same or similar training sets, such as *e.g.*, WebText, WebText2, and sets derived from Common Crawl. *See* PFAC ¶¶ 36-62; *New York Times*, 2025 WL 1009179, at *4, 16-17. So it would be unjust to treat them differently, particularly since it is OpenAI that sought to join them in the MDL. And the inconsistency arose only because OpenAI waited to move for an MDL until after the *Raw Story* and *Intercept* courts had issued conflicting decisions on standing and the briefing in *New York Times*, *Daily News*, and *CIR* was already complete; had it sought the MDL sooner, this Court would have addressed the *Raw Story* Plaintiffs' standing together with the other cases and reached consistent results across the cases.

The Court should therefore reconsider the *Raw Story* court's dismissal of the complaint and denial of the *Raw Story* Plaintiffs' motion for leave to amend their complaint.

### B.     The *Raw Story* Plaintiffs have standing.

On reconsideration, the Court should hold that the *Raw Story* Plaintiffs have standing.[4] This point need not be belabored, since this Court has already found standing from virtually identical allegations in *New York Times*, *Daily News*, and *CIR*. Like those other plaintiffs, the *Raw Story* Plaintiffs alleged that OpenAI downloaded tens of thousands of their articles and intentionally removed CMI from them before using the CMI-less copies to train its GPT models. *See* PFAC ¶¶ 36-62. Like CIR, the *Raw Story* Plaintiffs also alleged that OpenAI did so through a process that involved creating unauthorized copies and thus constituted actual *prima facie* copyright infringement. *Compare* PFAC ¶¶ 42-52 *with* CIR FAC ¶¶ 59-69. And again like CIR, the *Raw Story* Plaintiffs alleged that OpenAI did so knowing, or having reason to know, that

---

[4] The *Raw Story* Plaintiffs cite their Proposed First Amended Complaint because, as discussed more fully in Section III.C, *infra*, the Court should allow them to file the amended version.

removing CMI would conceal, induce, enable, and facilitate infringement by both OpenAI and its users. *Compare* PFAC ¶¶ 84-96 *with* CIR FAC ¶¶ 108-119. The Court has already found that these injuries are analogous to copyright infringement because "the harm involves an injury to 'another's property right in his original work of authorship'" and that they therefore ground standing. *New York Times*, 2025 WL 1009179, at 14 (quoting *Intercept*, 2025 WL 556019, at *5). It should reach the same conclusion here.[5]

### C. The Court should allow the *Raw Story* Plaintiffs to amend their complaint.

Because the *Raw Story* court found no Article III standing, it had no occasion to consider the other reasons why OpenAI argued that the case should not proceed: statutory standing under 17 U.S.C. § 1203(a) and the supposed failure to plead necessary elements of a section 1202(b)(1) claim.

This Court should consider that question vis-à-vis the *Raw Story* Plaintiffs' Proposed First Amended Complaint, not the initial version. Leave to amend is freely given when justice requires, *see* Fed. R. Civ. P. 15(a)(2), and at no point did either the *Raw Story* court or OpenAI give a reason for denying leave other than the supposed inadequacy of the pleadings. For instance, OpenAI did not argue that allowing an amendment would cause it any prejudice, and none is apparent. *See generally* MTA Opp. Further, the *Raw Story* Plaintiffs timely moved for leave to amend a mere two weeks after the court dismissed the complaint and are filing this motion within two weeks of both the order denying leave to amend and the order granting the MDL. Last, this Court granted OpenAI's motion to dismiss the New York Times' section 1202(b)(1) claim without prejudice,

---

[5] The Court can also find standing under an analogy to unjust enrichment for the reasons given in the *Raw Story*'s Motion to Amend briefing. The *Raw Story* Plaintiffs add only that the court's reason for rejecting that analogy—that "Plaintiffs do not explain how either the benefit or the expense of those costs would have found its way to or from Plaintiffs' pockets," MTA Order at 3—does not account for the Second Circuit's finding of standing in a case involving profits that would not have made their way into the plaintiffs pockets. *See Packer*, 105 F.4th at 51-56.

- 10 -

which has permitted the Times to file a second amended complaint to bolster its allegations under that statute. *See New York Times*, 2025 WL 1009179, at *2. The *Raw Story* Plaintiffs would be doing the same, but for the first time.

The *Raw Story* Plaintiffs' proposed pleading easily survives the objections the *Raw Story* court did not reach, essentially for reasons this Court has already given. As to statutory standing, the Court assumed without deciding that section 1203(a) requires allegations of injury beyond a mere statutory violation but found that the plaintiffs alleged various downstream injuries, such as the concealment of OpenAI's own copyright infringement and enabling and facilitating the copyright infringement of end users. *New York Times*, 2025 WL 1009179, at *15. The proposed pleading alleges just that. *See* PFAC ¶¶ 84-96.[6]

As to the first scienter element, intentional removal, this Court upheld the sufficiency of CIR's complaint based on its allegations about the functioning of the Dragnet and Newspaper algorithms and OpenAI's knowledge about them. *See New York Times*, 2025 WL 1009179, at *15. The *Raw Story* Plaintiffs' proposed pleading, drafted by the same counsel, contains substantively identical allegations and thus suffices. *Compare* PFAC ¶¶ 42-52, 83, 102; *with* CIR FAC ¶¶ 59-69, 103, 125.

As to the second scienter element, actual or constructive knowledge that removing CMI will induce, enable, facilitate, or conceal an infringement, the proposed pleading again suffices. This Court pointed to allegations in the CIR complaint that OpenAI has publicly acknowledged that it uses copyrighted works to train its models and that its models regurgitate content. *See New*

---

[6] The *Raw Story* Plaintiffs dispute that section 1203(a) imposes any additional requirement. The legislative history makes clear that this section was included merely to create a cause of action for violations of the statute's substantive provisions. *See* S. Rep. 105-190, at 38 (1998) (noting that this section "sets forth the general proposition that civil remedies are available for violations of sections 1201 and 1202").

*York Times*, 2025 WL 1009179, at * 17. It also relied on CIR's allegations that OpenAI's indemnification policies, and its recent adjustment to ChatGPT's settings to limit regurgitations, show that it was aware of the prospect of end user infringement. *See id*. Again, the *Raw Story* Plaintiffs' proposed pleading contains all these allegations and thus states a claim. Compare PFAC ¶¶ 67, 94 *with* CIR FAC ¶¶ 84, 118.

### IV. CONCLUSION

The Court should reconsider the dismissal of the *Raw Story* Plaintiffs' complaint and allow them to file their Proposed First Amended Complaint.

RESPECTFULLY SUBMITTED,

*/s/ Stephen Stich Match*

Jon Loevy (*pro hac vice*)
Michael Kanovitz (*pro hac vice*)
Matthew Topic (*pro hac vice*)
Stephen Stich Match (No. 5567854)
Thomas Kayes (*pro hac vice*)
Steven Art (*pro hac vice*)
Kyle Wallenberg (*pro hac vice*)
Shelley Geiszler (*pro hac vice*)

LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
jon@loevy.com
mike@loevy.com
matt@loevy.com
match@loevy.com
kayes@loevy.com
steve@loevy.com
wallenberg@loevy.com
geiszler@loevy.com

April 18, 2025